IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


JOEL BACA, MICHAEL LACKEY,
GERALD SALAZAR and THOMAS
ULIBARRI,

       Plaintiffs,

vs.                                                 Civil No. 09-0221 DJS/RHS

FISHER SAND and GRAVEL, CO., and
FISHER SAND and GRAVEL- NEW MEXICO,
INC., d/b/a SOUTHWEST ASPHALT PAVING,

       Defendants.


**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment **[Doc. No. 33]** filed on January 7, 2010, and fully briefed on February 24, 2010.  Defendant Fisher Sand & Gravel Co. (Fisher) moves the Court for summary judgment on Plaintiffs' Complaint for invasion of privacy, defamation, negligence, breach of contract, and for violation of the New Mexico Human Rights Act.[1]  Having reviewed the motion, the memoranda in support and in opposition, and the applicable law, the Court finds that the motion is well taken and will be **GRANTED**.

**I.  Background**

On February 12, 2008, Todd Tavis, Fisher's Human Resource Director, administered a crew reasonable suspicion drug test to Fisher employees working at the Montoya work site.

---

[1] Defendant Fisher Sand and Gravel-New Mexico, Inc. was not involved in hiring or in terminating  Plaintiffs's employment with Defendant Fisher Sand and Gravel, Co.

Defs.' Mem. Support Mot. Summ. J.; Ex. A, Tavis Dep., p. 11, ln. 19-21.  Mr. Tavis based his decision to conduct a drug test on confidential reports that workers at the Montoya site were using and possibly selling illegal drugs.  *Id.*, Ex. A, Tavis Dep., p. 14, ln. 2-25, p. 15, ln. 1. Plaintiffs Baca, Salazar and Ulibarri were working at the Montoya work site and provided urine samples as directed.  Plaintiff Lackey, who is an African American, refused to submit to drug testing and, pursuant to Fisher's Non-DOT Drug and Alcohol Policy, was terminated immediately.  Defs.' Mot. Support Summ. J.; Ex. J.

Eight employees tested positive, including Plaintiffs Baca, Ulibarri and Salazar.  All employees who had a positive urine drug tests were sent home pending the results of confirmatory laboratory testing.  *Id.*, Ex. D.  Laboratory testing of the presumptive positive samples confirmed the positive results of Plaintiffs Baca and Ulibarri, along with two other employees.  Fisher terminated all four employees.  However, laboratory testing of Plaintiff Salazar's presumptive positive sample indicated negative results for drugs.  Fisher terminated Plaintiff Salazar because he was arrested driving a company truck while under the influence of alcohol.  *Id.*; Ex. A, Tavis Dep., p. 48, ln. 22-49, p. 49, ln. 1-6., Ex. B, Olson Dep., p. 58, ln. 10-25, p. 59, ln. 1-25, p. 60, ln. 1-2.

Subsequently, Plaintiffs filed this action.  Plaintiffs originally filed their Complaint in the Fourth Judicial District Court of New Mexico on February 3, 2009.  Plaintiffs' Complaint alleges common law claims of invasion of privacy, defamation, negligence, breach of contract, and claims of employment discrimination under the New Mexico Human Rights Act.  *See* Notice of Removal (Doc. No. 1).  On March 6, 2009, Defendants removed the action on the basis of diversity jurisdiction.

## II.  Statement of Material Facts

Fisher set forth thirteen undisputed material facts.  Plaintiffs "do not dispute the Statement of Material Facts set forth in Defendants' Supporting Memorandum excepts (sic) for Statements of Fact Nos. 4 and 5."  Pls.' Reply at 3-4.

Statement of Material Fact No. 4 states, "of the employees who were tested, eight had presumptive positive test results.  Those test samples were sent for laboratory testing and interpretation by the Medical Review Officer."  Defs.' Mem. Support Mot. Summ. J. at 3.  In support of this material fact, Fisher presented the sworn deposition testimony of Fisher's former Human Resource Director and the drug test forms.  *Id.*; Ex. A (Tavis Dep.) & Ex. D (drug test forms for all 8 presumptive positives).

Plaintiffs dispute this fact claiming "there is no competent admissible evidence that any employee of Fisher Sand & Gravel, including the Plaintiffs had presumptive positive drug test results, nor is there evidence that Plaintiffs' urine specimens were forwarded for laboratory testing or interpretation by a medical review officer."  Pls.' Resp. at 4.  However, Plaintiffs failed to present any evidence that would create a genuine issue of material fact to contradict Fisher's Human Resource Director's sworn deposition testimony or the drug testing forms.

Statement of Material Fact No. 5 states, "Laboratory testing confirmed the positive results of 4 Fisher employees, including Plaintiffs Baca and Ulibarri.  Those four employees (three Hispanics and one Caucasian) were all terminated as was Mr. Lackey, who refused to be tested."  Defs.' Mem. Support Mot. Summ. J. at 3.  In support of this material fact, Fisher presented evidence showing the laboratory results confirming the positive results of the four Fisher employees.  Defs.' Mem. Support Mot. Summ. J.; Ex. D.  Fisher also presented the

3

termination documents for all four employees.  *Id.*; Ex. E (Human Resource's termination paperwork).

Plaintiffs dispute this fact claiming "there is no competent evidence in the record demonstrating that Plaintiffs Baca and Ulibarri had confirmed positive test results."  Pls.' Resp. at 4.  Again, Plaintiffs failed to present any evidence that would create a genuine issue of material fact to contradict Fisher's Human Resource Director's sworn deposition testimony and the confirmatory test forms or the reports from the Medical Review Officer.

### III.  Standard of Review

The Court will grant summary judgment when there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.  FED.R.CIV.P.56(c).  The movant carries the burden of establishing there are no genuine issues of material fact, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1609 (1970), but may discharge its burden by showing there is an absence of evidence to support the non-movant's case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986).  Once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue for trial on a material matter. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  In making its summary judgment determination, the court looks at the pleadings and documentary evidence in the light most favorable to the non-movant, *Deepwater Invs., v. Jackson Hole Ski Corp.* 938 F.2d 1105, 1110 (10th Cir. 1991), and the movant must show beyond a reasonable doubt it is entitled to summary judgment, *Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir. 1991).

However, once the burden shifts to the non-movant, that party may not rest on its pleadings but must set forth specific facts showing there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.  *Celotex Corp.*, 477 U.S. at 324, 106

S.Ct. at 2553.  However, "the mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10 (1986).  If the non-movant cannot make such a showing, after adequate time for discovery, summary judgment is mandated.  *Celotex Corp*., 477 U.S. at 322, 106 S.Ct. at 2552.  The Court will consider Fisher's motion for summary judgment in light of these standards.

### IV.  Discussion

Plaintiffs claim Defendants' "actions in requiring [them] to undergo drug testing . . . was intended by Defendants to create a pre-text (sic) for Plaintiffs' discharge based on Plaintiffs' race (Hispanic and African American) and national origin (Hispanic)."  Compl. ¶ 55.  Plaintiffs further contend Defendants' "drug testing policy . . . resulted in the disparate treatment of Plaintiffs" in violation of the New Mexico Human Rights Act (NMHRA), N.M.Stat.Ann. §§28-1-1 to 15.  *Id. ¶* 56.

### A.  Claim for Employment Discrimination/New Mexico Human Rights Act

Under the NMHRA, it is an unlawful discriminatory practice for "an employer . . . to discharge . . . any person otherwise qualified because of race, . . . [and] national origin . . . ."  N.M.Stat.Ann. §28-1-7 A.  Plaintiffs' claims under the NMHRA are analyzed with reference to the *McDonnell-Douglas* burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).  *Smith v. FDC Corp.*, 109 N.M. 514, 517 (1990).

#### 1.  Prima Facie Case of Discrimination

In order to prevail on a discrimination claim, a plaintiffs must establish a prima facie case of discrimination.  *Smith,* 109 N.M. at 518.  To meet this burden, plaintiff must show (1) he is a member of a protected class; (2) he was qualified to continue employment; (3) his employment

was terminated; and (4) his position was filled by someone not in the protected class. *Id.*  Once plaintiff meets his burden of establishing a prima facie case of discrimination, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. *Martinez v. Yellow Freight System, Inc.*, 113 N.M. 366 (1992).  "If the defendant articulates a nondiscriminatory reason for the termination, the plaintiff has the opportunity to show that the articulated reason was merely a pretext for a discriminatory action." *Id.* at 368.

There is no dispute that Plaintiffs are members of a protected class or that Fisher terminated Plaintiffs' employment.  Plaintiffs also were qualified to continue performing their jobs.[2]  However, Plaintiffs cannot show their positions were filled by persons not belonging to the protected class.  Charlie Dominguez replaced Plaintiff Ulibarri, Tomasita Brown replaced Plaintiff Lackey, and Robert Garcia replaced Plaintiff Baca.  Defs.' Mem. Support Mot. Summ. J.; Ex. K.  Dominguez, Brown and Garcia are all Hispanic.  *Id.*

Nonetheless, "a prima facie case can be shown absent a demonstration that the plaintiff was replaced by someone not in the protected class if he can show that he was dismissed for misconduct nearly identical to that engaged in by one outside of the protected class who was nonetheless retained." *Smith*, 109 N.M. at 518.  As discussed later, Plaintiffs cannot show they were terminated for "misconduct nearly identical to that engaged in by one outside of the protected class who was nonetheless retained."

---

[2] Fisher argues Plaintiffs were not qualified to continue their employment with Fisher Sand and Gravel, Co. because (1) Plaintiffs Baca and Ulibarri had confirmed positive drug tests for cocaine, (2) Plaintiff Lackey refused to submit to drug testing, and (3) Plaintiff Salazar admitted driving a company vehicle under the influence of alcohol.  Defs.' Mem. Support of Mot. Summ. J. at 5.  However, those were the reasons set forth by Fisher for terminating Plaintiffs' employment.  Prior to undergoing the February 12, 2008 drug testing at the Montoya work site, or refusing to submit to the on-site drug screening, Plaintiffs were all qualified to continue performing their jobs.

## **2. Legitimate, Nondiscriminatory Reason for Employment Decision**

Additionally, even if Plaintiffs, including Plaintiff Salazar, had established a prima facie case of race discrimination, Fisher has articulated a legitimate, nondiscriminatory reason for its employment decision to terminate their employment.  Fisher contends its projects usually involve a crushing aspect and a paving aspect.  The crushing process involves using bulldozers, front-end loaders to feed the crusher with the rock material.  Defs.' Mem. Support Mot. Summ. J.; Ex. A, Tavis Dep., p. 73, ln. 17-25.  The paving process involves diverting traffic, prepping shoulders and right of ways, setting grade, laying down the asphalt, checking for grade and depth of asphalt, etc.  *Id.*, p. 74, ln. 1-25.  Tavis testified regarding the hazards of engaging in this type of work and the necessity for its employees to be attentive at all times and most importantly, unimpaired.  *Id.*  Tavis also testified regarding the danger of having to engage in this type of work when only orange cones separate its employees from the general public traveling at speeds up to 50, 55, and 65 miles an hour.  *Id.*  Tavis testified the safety issue factored into his decision to conduct the on-site drug testing and also factored into his decision to terminate Plaintiffs Baca, Ulibarri and Lackey.  *Id.*, p. 75, ln. 4-16.

Fisher did not terminate Plaintiff Salazar because of his test results since his initially positive test for cocaine was not confirmed and, in fact, was negative according to the independent Medical Review Officer.  *Id.*, Ex. D.  Fisher terminated Plaintiff Salazar following its investigation into Plaintiff Salazar's arrest for operating a company owned vehicle while under the influence of alcohol in violation of company policy.  Defs.' Mem. Support Mot. Summ. J.; Ex. A, p. 67, ln. 17-25, p. 68, ln. 1-5.  David Olson, Plaintiff Salazar's supervisor, testified Fisher considered several factors in its decision to terminate him.  *Id.*, Ex. B, Olson Dep., p. 60, ln. 3-25.

First, Olson found out about the DWI incident when he received a call from the Albuquerque City Attorney's Office regarding an authorization letter Plaintiff Salazar presented to the city attorney in an attempt to pick up the Fisher vehicle. *Id.*, p. 59, ln. 23-25, p. 60, ln. 1-2. Olson testified Plaintiff Salazar forged the letter so that he could pick up the vehicle and not have to disclose the DWI to Fisher. *Id.* Second, Plaintiff Salazar's DWI resulted in the City of Albuquerque impounding the company vehicle, causing Fisher to lose use of the vehicle for a month and having to pay impound and interlock system fees in excess of $1400. *Id. &* Ex. G. Additionally, after Plaintiff Salazar's DWI, Fisher investigated his driving record and discovered he had prior DWIs that he had not disclosed. *Id.*, Ex. B, Olson Dep., p. 58, ln. 10-18.

### 3. Pretext

Plaintiffs dispute the truthfulness of Fisher's articulated reasons for their termination and contend they are pretextual. Plaintiffs Baca and Ulibarri contend Fisher's articulated reason for their termination "cannot be established on the basis of the record." Pls.' Resp. At 15. The Court disagrees. Fisher submitted test results from Heinen Medical Review confirming positive results for cocaine for both Plaintiffs Baca and Ulibarri. *Id.*, Ex. D. Plaintiffs Baca and Ulibarri failed to submit any evidence controverting those reports.

Plaintiff Salazar claims Fisher's reason for terminating him is pretextual because his arrest for DWI occurred on January 18, 2008, yet Fisher did not terminate him until after the February 12, 2008 on-site drug screening test. However, Fisher asserted it terminated Salazar not only for the DWI but for the consequences that followed. Fisher lost use of its vehicle for almost one month and had to pay over $1400 in fees in order to get its vehicle back. Moreover, after the DWI, Fisher investigated Plaintiff Salazar's record and found he had prior DWIs.

Finally, Plaintiff Lackey contends the reason for his termination, i.e., his refusal to submit to the February 12, 2008 on-site drug screening, is pretextual.  The Court disagrees.  It is undisputed that Fisher's Non-DOT Drug and Alcohol Policy informs employees that Fisher has the right to "terminate any employee that refuses to submit to a drug test or tests positive for any drug or alcohol."  Defs.' Mem. Support Mot. Summ. J.; Ex. J.

Plaintiffs also contend that similarly situated non-minority employees "were allowed to return to work following medical review."  Pls.' Reply at 15.  Plaintiffs claim "[t]his is evidence of disparate treatment and is direct evidence of racial motive and pre-text (sic)."  *Id.*

> To assert a claim of disparate treatment, the plaintiff must show that he was treated differently than other similarly situated employees who violated work rules of comparable seriousness.  Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline.

*Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) (internal quotations and citations omitted).

In this case, Fisher provided all employees with a copy of its "Fisher Industries Employee Handbook."  Defs.' Mem. Support Mot. Summ. J.; Ex. I.  Fisher also provided its employees with its Non-DOT Drug and Alcohol Policy.  *Id.*; Ex. J.  That policy makes clear that Fisher "reserves the right . . . to terminate any employee that refuses to submit to a drug and alcohol test or test positive for any drug or alcohol."  *Id.*  Fisher contends Plaintiffs violated Fisher's Non-DOT Drug and Alcohol Policy.

Fisher presented evidence showing that four Fisher employees, including one Caucasian, had laboratory testing confirming the positive results of the February 12, 2008 on-site drug screening.  Defs.' Mem. Support Mot. Summ. J.; Ex. D (drug test forms for all 8 presumptive positives).  Fisher terminated <u>all</u> four employee.  *Id.*; Ex. E.  Fisher also presented a list of sixty-

9

four former employees it terminated for failing drug testing in violations of its Non-DOT Drug and Alcohol Policy.  *Id.*; Ex. C.  Of the sixty-four employees Fisher terminated, thirty-five were Caucasians, twenty-five were Hispanics, three were American Indians, and one was Asian American.  *Id.*  Fisher also presented evidence showing that between 2007 and 2009 it had terminated four other employees for refusing to submit to drug testing, including three Caucasian employees and one Hispanic employee.  Defs.' Mem. Support Mot. Summ. J.; Ex. C.  Finally, Fisher presented evidence showing it had terminated three employees, including two Caucasians, for alcohol related incidents in company vehicles.  *Id.*; Ex. H.

Plaintiffs have not presented evidence indicating they were treated differently than similarly situated non-minority employees.  Fisher has provided a legitimate, nondiscriminatory reasons for terminating Plaintiffs' employment.  Plaintiffs failed to counter that evidence and thus failed to meet their burden of showing that the articulated reasons were merely a pretext for a discriminatory action.  Therefore, the Court will grant the motion as to Plaintiffs' claims of racial discrimination and disparate treatment.

**B.  Contract Claim**[3]

Plaintiffs  Baca, Ulibarri and Lackey make clear "that they do not contend that Defendants' drug testing policy converts the employment relationship from one terminable at will to one requiring just cause." Pls.' Resp. at 8.  Rather, Plaintiffs  Baca, Ulibarri and Lackey argue that Fisher's Non-DOT Drug and Alcohol Policy "simply limits the employer's use of drug tests in exchange for the employee's agreement to submit to drug testing."  *Id.*

---

[3] Because Fisher did not terminate Plaintiff Salazar's employment for violating its Non-DOT Drug and Alcohol Policy, he asserts no claim for breach of contract.

Fisher contends its Non-DOT Drug and Alcohol Policy did not create an implied contract because the policy's language is non-promissory in nature and lacks specific contractual terms that evidence intent to form such a contract.  Defs.' Reply at 6.

The Court agrees.  Fisher's Non-DOT Drug and Alcohol Policy sets forth its objective "for the protection of all its employees and customers, to maintain a drug free environment . . . " and guidelines as to how Fisher would implement its policy.  *Id.*; Ex. 1.  Plaintiffs Baca, Ulibarri and Lackey have not shown how this declaration of maintaining a drug free environment created a reasonable expectation that Fisher's ability to terminate an employee for violations of the policy had somehow been limited.  *See Sanchez v. The New Mexican*, 106 N.M. 76, 79, 738 P.2d 1321, 1324 (1987) (affirming the dismissal of an implied contract claim on grounds that "the handbook lacked specific contractual terms which might evidence the intent to form a contract . . . [insofar as the] language is of a non-promissory nature and merely a declaration of defendant's general approach"); *Stieber v. Journal Publ'g Co.*, 120 N.M. 270, 274, 901 P.2d 201, 205 (Ct.App.1995) (holding that general policy statements in a handbook are "insufficient to create an implied contract" because they are merely declarations of a general approach to the subject matter).

Additionally, Plaintiffs Baca, Ulibarri and Lackey contend that, "having issued a policy statement limiting its power to test and restricting its use of test results [Fisher was] bound by its provisions."  Defs.' Reply at 7.  Plaintiffs Ulibarri and Baca argue that because it was their first positive drug test, Fisher was bound to follow its policy to refer them to EAP and then allow them to return to work after successful follow-up testing.  *Id* at 9.  However, Fisher's Non-DOT Drug and Alcohol Policy clearly states that Fisher "reserves the right to terminate any employee

that refuses to submit to a drug or alcohol test" or who "test[s] positive for any drug or alcohol." *Id.*; Ex. 1.  Thus, Fisher was not bound to follow any specific course of action.

Because the Court finds that Fisher's Non-DOT Drug and Alcohol Policy did not create an implied contract in the context of alcohol and drug testing as Plaintiffs argue, the Court will grant Fisher's motion for summary judgment as to this claim.

## C.  Negligence Claim

To prevail on their negligence claim, Plaintiffs Baca and Ulibarri[4] must show: (1) the existence of a duty running from Fisher to Plaintiffs; (2) a breach of that duty based on a reasonable care standard; and (3) the breach of duty is both the proximate and in-fact cause of the plaintiff's damages.  *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 134 N.M. 43, 73 P.3d 181.  Whether the defendant owes a duty to the plaintiff is a question of law to be determined by the court.  *Id*.  A duty of care can be based on either a statutory or common law duty.  *Spencer v. Health Force, Inc.*, 2005-NMSC-002, ¶ 11, 137 N.M. 64, 107 P.3d 504.

Plaintiffs Baca and Ulibarri claim Fisher negligently conducted the drug testing that took place on February 12, 2008.  They contend the drug testing was conducted negligently because (1) the drug testing  was done in a public place; (2) the drug test results were publically announced; (3) the rapid screen tests were not confirmed through reliable scientific processes; (4) they were not granted medical review; and (5) they were not notified of the confirmatory testing results.  Pls.' Resp. at 2.  Plaintiffs argue that the manner in which Fisher conducted the on-site drug testing fell below the standard of care.  *Id.* at 9.

---

[4] This claim is not applicable to Plaintiffs Lackey or Salazar.  Fisher terminated Plaintiff Lackey for refusing to submit to drug testing on February 12, 2008.  Fisher terminated Salazar for the January 18, 2008 DWI incident in the company vehicle.

Essentially, Plaintiffs Baca and Ulibarri contend Fisher owed them a duty to use reasonable care when conducting drug testing. On the other hand, Fisher argues it owed Plaintiffs no duty to conduct the drug testing in any particular manner. Moreover, Fisher contends it exercised ordinary care when collecting, testing, and verifying Plaintiffs' drug test results.

The Court is not aware of any New Mexico case recognizing the duty that Plaintiffs advocate here, and Plaintiffs cite to no authority to support their contention. In fact, the Court's research yielded two cases addressing what duty an employer owes when the employer itself collects employees' urine samples for drug screening. In *Bellinger v. Weight Watchers Gourmet Food Co.*, 142 Ohio App.3d 708, 756 N.E.2d 1251, 1257 (2001), the court addressed what duty an employers owes when the employer, rather than a third party, collects employees' urine samples. In *Bellinger* an employer terminated an employee for failing a random drug test. The employee claimed his employer breached a duty to perform the test in a competent manner because it failed to follow the company's drug and alcohol policy. The court disagreed, holding that because the plaintiff was an at-will employee, his employer was entitled to discharge him whether or not he was subject to a drug test. Thus, the court held the employer did not owe the employee a duty to perform the test in a competent manner. *Id.* at 1257.

In *Mission Petroleum Carriers, Inc. v. Solomon*, 106 S.W.3d 705 (Tex. 2003), the Supreme Court of Texas addressed whether an employer owes a duty to an at-will employee to use reasonable care when collecting an employee's urine sample for drug testing pursuant to DOT regulations. The court noted it was not aware of any cases recognizing that duty. The court held the employer owed no duty to its employee to conduct the drug test with reasonable

13

care, reasoning that recognizing such a duty "would quickly swallow the [employment-at-will doctrine]." *Id*. at 715.

In this case, Plaintiffs Baca and Ulibarri do not dispute they were at-will employees. Consequently, Fisher owed no duty to Plaintiffs Baca and Ulibarri to conduct drug testing in any particular manner, and it was entitled to discharge them whether they failed or passed the drug test or give no reason at all for their termination. Accordingly, the Court will grant Fisher's motion for summary judgment as to this claim.

### D.  Defamation/Invasion of Privacy Claim

In order to prevail on their defamation claim, Plaintiffs must prove the following elements: (1) Fisher published a defamatory communication; (2) the communication contained a false statement of fact; (3) the communication was concerning the Plaintiffs; and (4) the communication proximately caused actual injury to their reputations. *Schuler v. McGraw-Hill Cos.*, 989 F.Supp. 1377, 1383 (D.N.M.1997). A statement is defamatory if "it has a tendency to render the party about whom it is published contemptible or ridiculous in public estimation, or expose him to public hatred or contempt, or hinder virtuous men from associating with him." *Id*. at 384 (quoting *Andrews v. Stallings*, 119 N.M. 478, 482 (Ct.App. 1995)). Additionally, "[t]he communication is concerning the plaintiff if the person to whom it was communicated reasonably understood that it was intended to refer to the plaintiff." *Id.* (citing N.M. UJI 13-1005 (1997)).

False light invasion of privacy is closely related to defamation. *Schuler*, 989 F.Supp. at 1389. In order to state a claim for false light invasion of privacy, Plaintiffs "need not prove that [they have] been defamed. Rather, "'[i]t is enough that [they are] given unreasonable and highly objectionable publicity that attributes to [them] characteristics, conduct or beliefs that are false,

and so is placed before the public in a false position. *Id.* (quoting *Moore v. Sun Publishing Corp.*, 118 N.M. 375, 383 (Ct.App. 1994)(internal quotations omitted).

      Plaintiffs contend the results of their drug tests were published at the time of their field tests when the results were disclosed in front of their co-workers, supervisors, other contractors and state inspectors. Plaintiffs Baca, Ulibarri and Salazar claim "that the publication of this information to their peers was false, defamatory and highly offensive. Additionally, Plaintiff Ulibarri testified in his deposition that he was defamed when Fisher employees said "we were nothing but drug addicts." Defs.' Mem. Support of Mot. Summ. J.; Ex. N, Ulibarri Dep., p. 81, ln. 13-25. However, he could not name one individual with certainty that had made any statement other than to claim the other employees were saying they were drug addicts. *Id.*, Ex. N., Ulibarri Dep., p. 82, ln. 1-25. Plaintiff Ulibarri also claims he was defamed when Bruce Baker, one of Fisher's managers, made a statement at the job site that he tested positive for drugs. *Id.*, Ex. N, Ulibarri Dep., p. 83, ln. 1-15. Even if Plaintiff Ulibarri had presented evidence to support his claims that Bruce Baker made this statement or provide the names of the Fisher employees that claimed he was a drug addict, he admitted he was a drug addict and he tested positive for drugs at the job site. *Id.*; Ex. N, Ulibarri Dep., p. 90, ln. 1-10. Plaintiffs Baca and Salazar also tested positive for drugs at the work site and presented no evidence to repute this fact. Because a communication of fact must be false to support a claim for defamation and for false light invasion of privacy, the alleged comments that Plaintiff Ulibarri was a drug addict and that he tested positive for drugs cannot support Plaintiff Ulibarri's claims of defamation or false light invasion of privacy. Likewise, because Plaintiffs Baca and Salazar tested positive for drugs at the work site, their claims for defamation and false light invasion of privacy fail.

As to Plaintiff Lackey, he claims Scooter Yokum, a Fisher employee, talked to his former in-laws about him failing the drug test even though he was terminated for refusing to take the drug test. *Id.*; Ex. L; Lackey Dep., p. 27, ln. 4-15. However, he testified it was only a hunch and had no evidence to show that in fact this happened. *Id.*, p. 28, ln. 13-18. Hence, Plaintiff Lackey also has not presented evidence to support his claims of defamation and false light invasion of privacy. Accordingly, because Plaintiffs failed to establish a genuine issue of material fact as to their claims for defamation and false light invasion of privacy, the Court will grant Fisher's motion for summary judgment as to these claims.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**